UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORDAN JEFFERSON,<br>           Plaintiff, | :<br>: |
| v. | :<br>:    No. 3:12cv1543(WWE) |
| THADDEUS REDDISH, MATTHEW ABBATE, DAVID GULIUZZA, JUSTIN MARSHALL, ANGELO MAURIELLO, FRANK LIMON, ARIEL MELENDEZ, and CITY OF NEW HAVEN,<br>           Defendants. | :<br>:<br>:<br>:<br>:<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The genesis of this civil rights action is plaintiff Jordan Jefferson's seizure at a nightclub in New Haven, Connecticut. Plaintiff alleges violations of his Fourth, Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 by the individual defendants, who are New Haven police officers. Specifically, plaintiff alleges that defendants Reddish, Abbate, Guliuzza, Marshall and Mauriello are liable for falsely arresting him, subjecting him to excessive force, and setting unreasonable bail bond in violation of the Fourth, Eighth, and Fourteenth Amendments; and that defendants Police Chief Limon, Assistant Chief Melendez and Sergeant Guliuzza are liable for failing to train and supervise properly the officers, who committed the unconstitutional acts. Plaintiff also alleges state law claims of negligent and intentional assault, negligent infliction of emotional distress, and liability of the City of New Haven pursuant to Connecticut General Statutes § 52-557n(a)(1).

Defendants have filed a motion for summary judgment on all counts. For the

1

following reasons, the motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

In support of the motion for summary judgment, the parties have submitted statements of facts in compliance with Local Rule 56(a), along with exhibits and supporting materials. The parties appear to disagree on most of the facts relevant to this action.

Chief Limon and Assistant Chief Melendez have represented that the City of New Haven experienced an escalation of crime in the downtown bar area. On October 2, 2010, the defendants entered the nightclub known as Alchemy/Elevate for inspection. The nightclub had low lighting and the music was playing when the police officers entered. Assistant Chief Melendez has represented that he perceived the need to call for backup due to a "mass exodus." Plaintiff maintains that there is conflicting evidence in the record regarding how many individuals were leaving the nightclub when the defendants entered the nightclub.

Defendants maintain that the occupancy limit of the club was 150 and that a headcount revealed more than 250 people within the club at the time of the incident. Plaintiff asserts that there is conflicting evidence concerning the number of people in the club and occupancy limits.

After the nightclub lights were turned on and the music turned off, the officers commenced a check of the patrons in conjunction with Connecticut Liquor Control. The patrons were instructed to sit down and to take out their IDs. Assistant Chief Melendez has indicated that he told the patrons to put away their cell phones "for the time being."

According to Officer Reddish, he also told the patrons to stay off and to put their cell phones down.

Some of the officers found the patrons to be cooperative, while others indicated that the patrons kept on moving around and failed to comply with instructions.

Plaintiff, who was a football player for Yale University aged 20 years old, was a patron at the nightclub on that evening. He had consumed two beers and a mixed drink prior to heading over to the nightclub. He recalls that the police ordered patrons not to use their cell phones during the investigation. After hearing this order, plaintiff looked at a notification on his phone and put it on silent. Officer Reddish then instructed him to move to a different area.

Approximately ten minutes later, the police instructed patrons to form a single line to exit the club. The line proceeded past the location where plaintiff was seated. During the exiting process, another patron began to speak with plaintiff. Plaintiff was instructed not speak to the individual. Plaintiff responded, "Why not? This is my friend." Officer Reddish advised plaintiff that he was under arrest, told him to stand up and place his hands behind his back. Plaintiff complied with this instruction. An officer whom plaintiff could not see grabbed his wrist and began to cuff him.

Plaintiff turned over left his shoulder towards the officer and asked him not to put the cuffs on so tightly. Plaintiff has stated that he "asked him nicely." Plaintiff maintains that he was thereafter tased, that he made no movements, and that his left hand remained cuffed. Defendants assert that plaintiff "attempted to prevent himself from being brought to the ground by officers by spreading his feet to maintain his balance and by holding his hands out to his side at waist height. Chief Limon was not present

3

during plaintiff's tasing.

The City of New Haven requires all officers to adhere to the training protocol established by state standards. The defendant police officers have all successfully completed the municipal police officer training academy program or a state-accepted equivalent. Chief Limon was granted a Certificate of Comparative Compliance from the State of Connecticut Police Officers Standards and Training Council. He has also completed the necessary training requirements and was granted formal certification on December 8, 2010.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining

whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

### Eighth Amendment and Fourteenth Amendment

Defendants have moved for summary judgment on the claims alleging excessive bail, false arrest, and unreasonable force in violation of the Eighth and Fourteenth Amendment. Defendants argue that such claims fail on the grounds of absolute immunity, inapplicability and the explicit textual source of protection of the Fourth Amendment. See County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). The Court agrees that the Eight Amendment is inapplicable to the facts of this case. Indeed, plaintiff has not posed an opposition to granting summary judgment on these claims. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003). Summary judgment will be granted on the claims asserting Eighth and Fourteenth Amendment violations. The Court will proceed to review the false arrest and excessive force claims under the Fourth Amendment.

**False Arrest**

Defendants assert that summary judgment is proper on plaintiff's Fourth Amendment claims of false arrest because the officers arrested the plaintiff with probable cause. Alternatively, defendants argue that they are entitled to qualified immunity. Plaintiff was arrested on charges of Assault on a Police Officer in violation of Connecticut General Statutes § 53a-167c, Inciting a Riot in violation of Connecticut General Statutes § 53a-178, Interfering with a Police Officer in violation of Connecticut General Statutes § 53a-167a, and Disorderly Conduct in violation of Connecticut General Statutes § 53a-182.

"Probable cause is the single requirement for a lawful arrest under the Fourth Amendment." Romagnano v. Town of Colchester, 354 F.Supp.2d 129, 135 (D.Conn. 2004). "Probable cause is a compilation of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillipo, 443 U.S. 31, 37, (1979). "The burden of establishing probable cause rests with the police, who must establish that there was a quantum of evidence which amounted to more than a rumor or suspicion, or even a strong reason to suspect." Travis v. Village of Dobbs Ferry, 355 F.Supp.2d 740, 748 (S.D.N.Y. 2005). The "'reasonable belief' standard may require less justification than the more familiar probable cause test." United States v. Manley, 632 F.2d 978, 983 (2d Cir. 1980), cert. denied, 449 U.S. 1112 (1981). Probable cause exists "when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

6

that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), cert. denied, 517 U.S. 1189 (1996).

In the case of a claim of false arrest, a police officer is entitled to qualified immunity if:  (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  A party is entitled to summary judgment based on qualified immunity if the court finds that the rights of the plaintiff were not clearly established or that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that he was not clearly violating an established federal right.  Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1996).

Defendants maintain that plaintiff's claim for false arrest fails because the undisputed facts establish that there was probable cause for at least the charge of Interfering with an Officer, which provides: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer ... in the performance of such officer's ... duties." Section 53a-167 defines "interfering to include obstruction, resistance, hindrance or endangerment....By using those words it is apparent  that the legislature intended to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties.....Thus, the  broad intent of § 53a-167a is to prohibit conduct that hampers the activities of the police in the performance of their duties." State v. Aloi, 280 Conn. 824, 832-33 (2007).

Defendants maintain that plaintiff disregarded the police order to refrain from

using cell phones during the investigation and by becoming argumentative when directed by the officer to refrain from speaking to the other patron in line.  In this instance, the evidence presented concerning plaintiff's non-compliance with the cell phone order and his alleged argumentativeness do not entitle defendants to the entry of summary judgment on the merits or on the basis of qualified immunity.  The scope of the officers' instruction to refrain from cell phone use is disputed.  The question of whether plaintiff's conduct constituted non-compliance with the cell phone order or whether he became argumentative represent questions of fact for the jury.  Accordingly, the Court cannot find that either probable cause or even arguable probable cause existed for an arrest based on Interference with an Officer.

      Defendants also assert that plaintiff resisted the officers' efforts to bring him to the ground and secure him in handcuffs by spreading his feet apart to maintain balance.  However, the evidentiary record includes the conflicting testimony of plaintiff and the defendant officers.  Accordingly, the facts concerning plaintiff's alleged resistance are disputed and cannot sustain a finding that the defendants are entitled to a grant of summary judgment on the merits or on the basis of qualified immunity. Summary judgment will be denied as to the false arrest claim.

      **Excessive Force**

      Defendants maintain that they are entitled to summary judgment on the Fourth Amendment excessive force claim because the use of force was reasonable. Alternatively, defendants assert that qualified immunity applies.

      Under the Fourth Amendment, a claim by a citizen that law enforcement officials used excessive force is reviewed under "objective reasonableness" standard.  Graham

v. Connor, 490 U.S. 386, 388 (1989).  To determine whether excessive force occurred, the Court considers the "objective reasonableness" of a police officer's particular use of force, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing interests at stake."  Graham, 490 U.S. at 396.  This analysis requires careful attention to the individual circumstances present, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

     Here, plaintiff may demonstrate that the defendants' use of force represented an unreasonable use force in light of the circumstances.  The question of whether the amount of force used was excessive or objectively reasonable force remains a question for the jury.  Similarly, the disputed issues concerning the circumstances of defendants' use of force precludes a finding that summary judgment applies on grounds of qualified immunity.  See Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").  Accordingly, the Court will deny summary judgment on this claim.

**Supervisory Liability**

Defendants argue that summary judgment is appropriate on plaintiff's allegations of Fourth Amendment violations against defendants Chief Limon, Assistant Chief Melendez, and Sergeant Guliuzza based on their allegedly grossly negligent supervision of their subordinates.[1]

Section 1983 imposes liability only upon officials whose conduct has actually caused a violation of an individual's constitutional rights. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Personal involvement of a supervisor may be established by evidence that (1) the official participated directly in the challenged conduct; (2) the official, after learning of a subordinate's unlawful conduct, failed to remedy the wrong; (3) the official created a policy or custom of fostering the unlawful conduct; (4) the official was grossly negligent in supervising the subordinates who committed unlawful acts; or (5) the official exhibited deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). A plaintiff may hold a municipal official liable in his or her official capacity under § 1983 for supervision of employees if the official should have known that the alleged inadequacy was "so likely to result in the violation of constitutional rights," that the official "can reasonably be said to have been deliberately indifferent to the need." Walker v. City of New York, 974 F.2d 293, 298 (2d Cir.1992), cert. denied, 507 U.S. 961 (1993). There must be an affirmative link between the alleged constitutional deprivation and the act of the supervisor that caused

---

[1] Plaintiff's opposition brief appears to have abandoned any failure to train basis for supervisory liability.

10

the alleged violation.  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 1999).

Defendants maintain that neither Chief Limon nor Assistant Chief Melendez were present or personally involved in plaintiff's arrest or the police officers' use of force against him.  Plaintiff counters that he could demonstrate that defendants Limon, Melendez and Guliuzza were personally involved in the constitutional deprivation and that they were grossly negligent in supervising their subordinates such that the constitutional deprivation occurred.

In responding to a question regarding who was present during the "interference" incident, Sergeant Guliuzza stated: "Me, Two officers, um, Lieutenant Reddish, Curitis Miller was there ...the Assistant Chief Melendez was there ... to my knowledge, the Chief was there, I don't know at what time or at what point he was not there."  A jury should determine the credibility issues regarding who was present at what times during plaintiff's arrest and the use of force, and whether any of the supervisory defendants were so grossly negligent in supervising their subordinates so as to incur liability.  Summary judgment will be denied as to this claim.

**Assault and Battery**

Defendants maintain that summary judgment should enter on the state law assault and battery claims because defendants used a reasonable, and therefore authorized, amount of force.  A person is liable for tort of battery if he or she causes a harmful contact with another person, and he or she intended to cause a harmful or offensive contact with another person or an imminent apprehension of such contact.  Alteiri v. Colasso, 168 Conn. 329, 334 n.3 (1975).  As previously discussed, the factual circumstances of the alleged excessive force are disputed.  Accordingly, summary

judgment on the assault and batter claims must be denied due to disputed issues of fact.

**Negligence**

Defendants move for summary judgment on plaintiff's claims sounding in negligence based on discretionary act immunity.

A municipal employee enjoys qualified immunity from tort liability based on unintentional conduct related to the performance of governmental or discretionary acts. See Elliot v. City of Waterbury, 245 Conn. 385, 411 (1998). "The hallmark of a discretionary act is that it requires the exercise of judgment." Lombard v. Edward J. Peters, Jr. P.C., 252 Conn. 623, 628 (2000). The manner in which a police officer makes an arrest, including when to use force, is a discretionary act. See Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-181 (1988) (policing community and investigating those who break the law is discretionary function); see also Galindez v. Miller, 285 F.Supp.2d 190, 195 (D.Conn. 2003) (determination of what level of force to use under the circumstances "appears to fit" within framework of police discretion).

However, such immunity does not apply where the conduct subjects an identifiable person to imminent harm. Bonamico v. City of Middletown, 47 Conn.App. 758, 761 (1998). In Doe v. Petersen, 279 Conn. 607, 615 (2006), the Connecticut Supreme Court set forth that this exception requires "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Id. at 616. "[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant

had a clear and unequivocal duty to act immediately to prevent the harm." <u>Haynes v. Middletown</u>, 314 Conn. 303, 322-23 (2014).  Courts within this district have applied the identifiable person-imminent harm exception in the context of excessive force claims based on affirmative acts.  <u>Crawford v. City of New London</u>, 2014 WL 186417, at *13 ( D. Conn. 2014).  In this instance, plaintiff could constitute an identifiable victim of the alleged harms caused by the force applied if such force is shown to be unauthorized as excessive.   As previously discussed, disputed issues of fact relevant to the officers' conduct preclude summary judgment on whether the imminent harm exception applies to bar the negligence claims.  Summary judgment will be denied.

## **CONCLUSION**

Based on the foregoing discussion, defendants' motion for summary judgment [Doc. 50] is GRANTED in part and DENIED in part.  Summary judgment is GRANTED on plaintiff's claims of claims alleging violations of the Eighth and Fourteenth Amendments. Summary judgment is DENIED on plaintiff's claims of Fourth Amendment violations based on false arrest and excessive force; and on his state law claims of assault and battery, negligent assault, and negligent infliction of emotional distress.

Jury selection is scheduled for March 27, 2017, with trial to commence thereafter.

                                   <u>/s/ Warren W. Eginton</u>
                                   Warren W. Eginton,
                                   Senior U.S. District Judge

Dated this 4th day of January 2017 at Bridgeport, Connecticut.